Your argument this morning is Williams v. DeJoy. Good morning, Ron. I will call your name when we're ready. Mr. Smith. May it please the court. Again, I'm Michael Smith representing the appellant, Carlos Williams. I have not been on the trial. I've only been on his appeal. I've looked through the transcript on the proceeding, and what I tend to find is that the trial court was very combative with my client. We find that there was a lot of interruptions during the trial. Now, part of that was he was pro se, so the court seemed to be taking out grievances because he didn't have an attorney, but there was... The court actually was trying to help him, too. She urges him several times not to open the door on discussing the incident with the teenage girl, and he pays no attention to what she said, but that I regarded as a piece of helpful advice from her if he had followed it. Your Honor, beside that, there were many other incidents. The opening the door, as you just sort of alluded to, basically, he was in cross-examination and examination. He had mentioned that he was actually challenging charges against him in EEOC. Now, the court took that harassment as he was going to bring out the incident. They had a sidebar, and at the sidebar, basically, it was just shown by the government that he opened the door, and the court agreed with him, but that was very detrimental because bringing that out to a jury... Of course it was detrimental, but it's easy for anybody to read what he said, and it's not the first time any of us have seen such things. And that's why the court was trying to help him not to open these doors because it was detrimental. But, Your Honor, it seemed to be very innocent, what he was doing.  If you open the door, you open the door. But I think, Judge, by looking at the statement by him that caused the door to be opened was not actually something that was bringing out the incident with the complainant means. It seemed to me that the district court judge was quite patient with your client throughout this. I'm sorry, I didn't catch that. It seemed to me that the district court judge was quite patient with your client. But it looked very combative, Judge. I mean, at this point, that's what I was concerned about. That's not really reversible error, though. I mean, what legal things did the district court slip up on, in your opinion? Well, we were looking at the failure to allow him to have an attorney. He did have one attorney. He had two attorneys. He did. And they both found him too difficult to work with. We have told district judges to stop that once they have recruited a lawyer and the lawyer asks to be out, the judge should not try again, shouldn't reward difficult clients. And this looks like the very example of why we've given that advice. What's the legal error in following advice from the Seventh Circuit? In addressing that, Your Honor, basically, he objected to the last attorney based on he pointed out in his motion to object to the withdrawal that there were many things that he thought were advantageous to him to be presented to the court. But the court, here's the problem. A, there is no right to a lawyer in this type of civil litigation. There is a facility for a judge to recruit a willing volunteer to help somebody. Sometimes there's even some possibility of attorney's fees at the end of the line, but it's recruiting a volunteer. And the lawyer is trained in the law, right? So a client may think certain arguments are winners, but they actually may not be for any of a host of reasons. And so if you're given a lawyer and you are appreciating that gift from the system, you need to listen to your lawyer. And as Judge Easterbrook says, not only is there no right to begin with to a lawyer, but there certainly isn't a right to lawyer number two, number three, number four. Any good lawyer might have the same disagreement with him. In fact, he went through three, I thought. But there was the original lawyer, then somebody was substituted, and then there was the first recruited lawyer. And the judge says, I'm not gonna go down this path again. And in so doing, she was abiding by the guidance that this court's given. But Your Honor, also the court in denying his motion for an appointment also- There is no such thing as an appointed counsel in private civil litigation. Judges have the statutory authority to recruit counsel. You need to explain to us why it was legal error not to recruit another lawyer when the plaintiff was not following his lawyer's advice. Because in the motion to object, Your Honor, he also listed out things that he thought were gonna be advantageous to him. That he thought, were you listening to Judge Wood? Also, in that motion, Judge, it tended to show the court the complexity of the case. And I think that's the main issue. But it doesn't matter how complex it is. If you have a lawyer who withdraws essentially because you're asking her to argue issues that she doesn't think she can do under Rule 11. Ms. Brown is a very talented employment lawyer. And from the record, while she was representing him, was certainly beneficial to him. But he wanted her to pursue these double jeopardy and due process issues that she didn't think were appropriate. So that's, he made that determination. And I will add to the extent that he has now raised those things, both at the district court and through the brief you filed, these are meritless arguments. I mean, her judgment was very sound. But getting back to my initial comment about the combativeness in reviewing those transcripts, it certainly came out that she interrupted him many times in his cross-examination. But you still haven't answered what the legal error is of that. Excuse me, Judge. You haven't answered what is the legal error, assuming that's true. And that's not how I read the transcripts. But assuming that's true, what is the legal error? I believe because of the complexity of the case. And it could be noted by the court that during the issues that were arisen, the court many times had admonished the client about the facts that he was doing things wrong. He wasn't cross-examining correctly, and she basically would take charge. So it certainly interrupted his case strategy or cross-examination. All right, so maybe we can move off this topic. So one of your big points is that you think that there was a mistake about counsel. Is there anything else you would like to tell us? Well, you also had the issue of he made a motion to dismiss based on the charges against him were incomplete. He was then charged with being off from June 6th when he also got a letter, as I've indicated, on June 9th to report back to work. That was then a defective removal. What statute did it violate? As far as a statute, Judge, I don't believe there's a statute. I believe, though, it's defective. This is a case resting on a supposed violation of a federal statute, and it's a problem if you can't articulate what statute the behavior, the asserted behavior violated. I hope you can see that. I believe, Judge, that even the agency had pointed out in the motion to dismiss that it went to the heart of the case if, in fact. What statute has been violated? I can't say the statute, Judge. I can only say that even the agency admitted that the case would have been thrown out as almost like a summary judgment in favor of him if they ruled against that agency's incorrect document. So the document is probably not something that's protected by federal law, but I think it's basically a right, an equity right that he has to have a document in front of him that's correct. He filed a, he's the plaintiff, and he filed a motion to dismiss, which procedurally makes no sense. That's essentially asking the court to throw out any defenses and find for him that. There is no procedural motion to dismiss for a plaintiff to do that, and the judge was trying to help him by recharacterizing it and addressing what she thought he might be trying to get at. In addressing that, Judge, I believe, again, that the government indicated that changing that date would destroy the case, and also that what. 12B6 is a motion for failure to state a claim. He's the plaintiff here. There is no procedural motion to dismiss when you're the plaintiff, unless the defendant has counterclaimed, which isn't what happened here. I don't see that. And certainly no motion just to order judgment for the plaintiff when the defendant is opposing the case. Excuse me, Judge. I mean, there is no motion that says, please reinstate me in stanter when the defendant is opposing the case. The defendant is taking the position that there are no statutes that have been violated here, in partial answer to Judge Easterbrook's point. But even the agency admitted that if she approved that the charge was incorrect on its face, That doesn't mean it was discriminatory on the basis of race or national origin or gender. Those are very particular claims to make, and that's what survived in this case. But that's, Your Honor, that's exactly what caused him to be. I don't see any evidence of any of those forms of discrimination. I think it goes also to the fact that he, as we pointed out, was an EEOC representative, and he had represented many people before the same people that had terminated him. So it seemed to be a rush to judgment. Also- Well, that's a separate kind of claim which the district court did not leave in the case. It sounds to me like you're suggesting there was some sort of retaliation claim, but I don't see that anywhere in this case. And I think the district court allowed him to bring in the fact of those other complaints that he had assisted in filing, just not the details of them. Not the details, and not all the employees in question. Because that would be a MIDI trials that are completely irrelevant. But that would be a separate issue, Judge. In dealing with that, it was important to be able to characterize his personal EEOs that he had filed against the very people that were making the determination that he violated the AWL case. She allowed in the fact of those other complaints. The only thing that he was allowed to do is give the status that it was either accepted or denied. Was not allowed to go into the element that tended to show that the retaliation and the discrimination based on- But the argument was that the retaliation came because of the mere fact that he filed them. I think it needs to go, though, to the elements of what was in those charges. That would create a lot of jury confusion. But I think it'd be important for the jury to hear it. Maybe a judge could discount it, but a jury's gonna give some credence to that. Seeing that somebody is being discriminated against based on the race or based on their prior EEO activities is certainly relevant, I think, to his case. You're about to run out of your rebuttal time if you're saving any. I'm sorry, I didn't hear that. I said you're about to run out of your rebuttal time if you're saving any. Oh, I'm sorry. I will save. Thank you. Certainly, Mr. Smith. You should have a seat at council table, Mr. Smith. Yeah. Ms. Flannery. Counsel. May it please the court. Appellant Carlos Williams' appeal is a classic example of everything but the kitchen sink. But this appeal is regarding solely two issues. The court's summary judgment ruling in favor of the Postal Service regarding Mr. Williams' 2013 emergency placement and removal, and the jury verdict in favor of the Postal Service regarding Mr. Williams' 2014 removal. Very briefly, regarding the summary judgment opinion. The court properly found that the Postal Service articulated legitimate, non-discriminatory reasons for its actions when it decided to place Mr. Williams on emergency leave in 2013 and then terminate him after he had an inappropriate interaction with a high school teenager on his mail route. The mother reported that she was frightened and that they were concerned that Mr. Williams would return to the home. After an OIG investigation concluded that he did in fact violate policies through his conduct, they terminated him. Is this really still in the case? I mean, I was under the impression that there were administrative proceedings at the end of which the termination was dramatically scaled back to a six-day suspension and then that was more or less over with. What's still here about that? Yes, Your Honor, so Mr. Williams filed a series of grievances regarding that emergency placement and termination, and the parties had an arbitration where a settlement was reached. Mr. Williams was at the arbitration and they agreed that Mr. Williams would return to work two days later. And this is where he says he was there and heard all of it except for the June 6th reference? Correct. He was present. He knew he was supposed to return to work. He disputes what day he was supposed to return to work, but that doesn't change the fact that he never came to work for two months. He didn't respond to his supervisor's attempts to reach him and he never submitted any documentation substantiating his absence. And so the jury was entirely correct. The verdict was there was no error when the jury ruled in favor of the Postal Service because Mr. Williams failed to come to work for two months in 2014. I want to- Did Mr. Williams introduce any evidence tying either of these events, the 2013 or the 2014 dismissal to any protected characteristic under the statute? No, besides his own say-so, no. There was no testimony or evidence from his supervisors, anything to that effect. I also- No comparators, no? Your Honor, he did call a comparator as a witness, two comparators as witnesses, but they testified about why they missed work, the circumstances for them missing time at work and why they had FMLA leave or why their absences were excused, yet Mr. Williams were not. So he did introduce evidence of comparator, but it didn't persuade the jury. It seems like this was all happening at the 2014 return to work and all the rest of it, a very difficult time for Mr. Williams since his wife had recently passed away. Yes, Your Honor. His wife had unfortunately passed away shortly before the arbitration, but at no point at that arbitration did he ever say he couldn't return to work. And so while he may have been going through a difficult time, you have to actually tell your employer you can't come to work, and he never did that. And so, and any medical documentation that he had regarding his inability to return to work was submitted months after the fact and after his termination was effective. Can you, speaking of months later, can you explain to me the back pay issue? Because in the government's brief, there's this kind of breezy little statement that the back pay was never paid. And it seems like in 2018, he did fill out the paperwork for it. Yes, Your Honor. So at the arbitration, they agreed that Mr. Williams would receive 50% of his back pay. Mr. Williams repeatedly objected to the calculation of the back pay. He repeated, he objected to that calculation for four years through counsel. He refused to sign the paperwork. And so Postal Service did not pay him the back pay because there was no agreement on how much that was going to be. It was only after the case had been filed in federal court and the parties were in discovery and the case was proceeding did Mr. Williams decide to sign the back pay paperwork and submit it. And so he makes issues about, he raises issues. I mean, at that point, I mean, it's probably outside the record, but was it paid? No, he was not. So it's just not paid, huh? No. He wanted to introduce evidence of that back pay paperwork at trial, but whether or not he signed paperwork in 2018 had no bearing on his 2014 termination. I just wanna briefly discuss the issue, two issues. One is this idea that there was defective documents, that there were paperwork that wasn't filled out when he was removed from his employment in 2014. Whether or not Mr. Williams has a due process claim, he was able to raise those arguments and make whatever arguments he wanted to make through witnesses at trial. He asked those witnesses about why they filled out documents the way they did, if they were in line with Postal Service policy, and they answered those questions and they explained it to the jury. So there's no error, there's no prejudice regarding these due process defective document claims, because the jury heard that evidence. And lastly, regarding opening the door evidence. Prior to trial, Mr. Williams sought to exclude one letter from the young woman, the letter articulating what happened. He did not seek to exclude the events that happened in 2013, but the court excluded it nonetheless. And the court repeatedly warned Mr. Williams about not opening the door, but he got up on the stand and he immediately started testifying regarding those 2013 events. He wanted to discuss those issues, and he did, and he was able to explain to the jury his view of events of his interaction with that young woman. And so he cannot articulate prejudice as a result of himself opening the door. And finally, my last point, Mr. Williams has waived arguments regarding the weight of the evidence or the sufficiency of the evidence because he didn't file any post-trial motions through counsel, which he had. And if the panel does not have any further questions, we request that the court affirm the district court's award of partial summary judgment, affirm the district court's pretrial rulings, and affirm the jury verdict in favor of the Postal Service. Thank you. Thank you, counsel. Anything further, Mr. Smith? I have just a few things. I certainly appreciate the time to appear before this court. Counsel's pointed out about his missing work and things like that. He was going through a very difficult time at the loss of his wife and burying his wife. He, in opposition to what counsel said, he then was calling in once he knew about when he was supposed to come back to work, he was calling in on a landline quite a few times looking for FMLA right. He then never got a response from them, but he did attempt to get additional time to return to work. As far as the defective document, I think I covered that pretty extensively. I think counsel didn't really cover the motion to dismiss like I believe that I did. I don't have much more that I can give the court in the few minutes and seconds I got left. I didn't mean to go over, but thank you again for allowing me to appear, and we hope that the court will take in consideration the things that have been raised in our brief, and then reverse the judgment. Thank you. Thank you, counsel. The case is taken under advisement. The next case